UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

                                                           20-cv-5237 (ER)

SHANA MELIUS,

                        Plaintiff,

            -against-

NEW YORK CITY COUNCIL and
COUNCIL MEMBER ANDY KING,
in his individual capacity,

                        Defendants.

-----------------------------------------------------------X

        MEMORANDUM OF LAW  IN SUPPORT OF DEFENDANT KING'S
                    SUMMARY JUDGMENT MOTION


                                    Pamela D. Hayes
                                    200 West 57th Street – Suite # 708
                                    New York, New York 10019
                                    212-687-8724
                                    pamhayes7777@gmail.com

                                            -and-

                                    Nathaniel B. Smith
                                    225 Broadway- Suite 1901
                                    New York, New York 10007
                                    (212) 227-7062
                                    natbsmith@gmail.com

                                    Attorneys for Defendant Andrew L. King

Dated:  April 13, 2022

TABLE OF CONTENTS

Preliminary Statement and Summary of Argument .........................................................5

Statement of Facts ......................................................................................................7

Argument ...................................................................................................................9

The Summary Judgment Standard.................................................................................9

I.  Melius Cannot Establish An Adverse Employment Action.......................................10

II.  The Equal Protection and City Law Claims Should Be Dismissed .........................13

III.  The Failure to Accommodate Claim under City Law Should Be Dismissed.........16

IV.  Melius Should Be Equitably Estopped From Recovering Damages ....................18

Conclusion.................................................................................................................20

## TABLE OF AUTHORITIES

*Antonmarchi v. Consol. Edison Co. of N.Y., Inc.,* No. 03 Civ. 7735(LTS) (KNF), 2008 WL

    4444609 , 2008 U.S. Dist. LEXIS 75458, (S.D.N.Y.2008) .......................................................10

*Dudley v. New York City Housing Authority,* 2014 WL 5003799, 12-cv-2771 (PGG) (S.D.N.Y.

    Sept. 30, 2014) ...................................................................................................................8, 15

*Engquist v. Oregon Dep't of Agriculture*, 553 U. S. 591(2008)................................................5,12

*Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231 (1959) ...........................................5, 17

*Heckler v. Community Health Services*, 467 U.S. 51 (1984) .......................................................17

*James v. Mun. Credit Union, No.* 13-CV-4568, 2016 WL 698136 (S.D.N.Y. Feb. 19, 2016) .....10

*Levitant v. City of N.Y. Human Res. Admin.*, 914 F. Supp. 2d 281 (E.D.N.Y. 2012) ....................9

*McKennon v. Nashville Banner Publ'g Co*., 513 U.S. 352 1995) .................................................18

*Plyler v. Doe*, 457 U. S. 202 (1982) .............................................................................................12

*Ray v. New York State Ins. Fund, No.* 16-CV-2895, 2018 WL 3475467

    (S.D.N.Y. July 18, 2018)..........................................................................................................9

*Reyes v. Westchester Cnty. Health Care Corp.*, 2021 WL 4944285, No. 21-0410

    (2d Cir. Oct. 25, 2021)...........................................................................................................11

*Shargani v. N.Y.C. Dep't of Envtl. Prot.*, 21 Civ. 337 (AKH) (S.D.N.Y. Apr. 7, 2022)...............11

*Smalls v. Allstate Ins. Co.,* 396 F.Supp.2d 364 (S.D.N.Y.2005)...................................................10

*St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287 (E.D.N.Y. 2014) ...................................10

*Taylor v. N.Y.C. Dep't of Educ*., No. 11-CV-3582, 2012 WL 5989874 (E.D.N.Y. Nov. 30, 2012.9

*Tepperwien v. Entergy Nuclear Operations, Inc*., 663 F.3d 556 (2d Cir. 2011)..........................14

*Tringone v. N.Y. State Office of Mental Health*, 18-CV-1896 (EK) (ARL)

    (E.D.N.Y. Nov. 15, 2021) .........................................................................................................9

*Vega v. Hempstead Union Free School Dist.,* 801 F. 3d 72 (2d Cir. 2015) ................................. 13

*Village of Willowbrook v. Olech*, 528 U. S. 562 (2000) .............................................................. 12

*Williams v. N.Y.C. Hous. Auth.,* 61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dept. 2009) ...................... 14

*Preliminary Statement and Summary of Argument*

Defendant Andrew L. King ("King") submits this memorandum of law in support of his motion for summary judgment dismissing the Complaint of Plaintiff Shana Melius ("Melius"). Melius asserts three claims in her Complaint: (1) a retaliation claim under the Equal Protection clause for allegedly opposing gender discrimination; (2) a related retaliation claim under the New York City Human Rights Law ("NYCHRL"); and (3) an alleged failure to provide her with a reasonable accommodation for a pregnancy-related condition under the NYCHRL. (Complaint ("Cmplt.") ¶¶ 66-76; King Summary Judgment Exhibit 2.)

King asserts in this motion that there is insufficient evidence in the record to raise a genuine issue of material fact as to any of Melius's claims. First, both retaliation claims should be dismissed because Melius did not suffer a cognizable adverse action, which is an essential element of her retaliation claims under federal and city law. Melius contends that after she spoke to City compliance officers in April of 2019, King ordered his Chief of Staff, Helen Hines, to require Melius to report to work at King's District Office in the Bronx. Since reporting to work at the District Office was already a regular part of Melius's duties, the direction to report to the District Office cannot as a matter of law constitute an adverse action.

Second, Melius's claim under the Equal Protection clause should be dismissed as a matter of law because it is in substance a class-of-one claim, which does not apply in the public employment context under the Supreme Court's *Engquist* decision. Melius does not claim that she was targeted based on racial animus or her membership or classification in another group of people who have been protected from invidious discrimination under the Equal Protection clause. Nor does Melius assert that she was treated differently than others similarly situated or that she was selectively treated for malicious reasons. And the record shows that the City

compliance officers who questioned Melius were focused on asking questions about anger
management issues by another member of King's staff, not about invidious discrimination
protected by the Equal Protection clause.  As such, Melius is only left with a class-of-one type
claim, which is barred by *Engquist* v. *Oregon Department of Agriculture*, 553 U. S. 591 (2008),
where the Supreme Court categorically held that a class-of-one claim cannot be asserted as a
matter of law in the public employment context.

Third, Melius's claim for failure to provide a reasonable accommodation fails for two
simple reasons.  First, it is undisputed that Melius was provided with an accommodation to leave
work early to go to her doctor's appointment, (*see* Exhibit 9), and Melius testified that in fact she
did not miss any of her doctor's appointments during the relevant period of time.  (Melius
Deposition Transcript.  ("Tr.") at 247:24-249:10 & 253:17-254:16; Exhibit 1.)  Second, Melius
did not suffer from any kind of disabling condition related to child birthing or pregnancy and as
such did not have a condition protected under the NYCHRL.

Finally, Melius should be equitably estopped from asserting the protections derived from
her employment status because she made materially false and perjurious statements in her
employment application about her residence and her criminal history.  The New York City
Administrative Code provides that an employee who falsifies his or her residence requirements
in order to secure City employment forfeits that status.  *See* NYC Adm. Code § 12-120.  Since
residence in the City was a condition of employment, Melius should be estopped from seeking
the benefits of a status that she secured by fraudulent means.  *See Glus v. Brooklyn Eastern
District Terminal*, 359 U.S. 231, 232-33 (1959) ("To decide the case we need look no further
than the maxim that no man may take advantage of his own wrong. Deeply rooted in our

jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts."); Restatement of the Law of Torts 2d at §894.

*Statement of Facts*

The facts relevant to this motion are set forth in the accompanying Rule 56.1 Statement. Briefly, the facts of the case are these:

Melius worked as a staff person at King's City Council office for a total of 11 months from July 9, 2018 until she voluntarily resigned on June 11, 2019. In April of 2019, after working at King's office for about nine months, Melius was interviewed by a City Council compliance officer about allegations that another member of King's staff and his deputy chief of staff, Comy ("Cee") Lewis, had anger management issues and had acted out on three other staff members, including Melius and two male staff members. Melius told the compliance officer that Lewis had acted aggressively toward her and the other staff members. (Rule 56.1 Statement Nos. 33-36.)

At some point shortly after the interview, Lewis was suspended by the City Council (not by King), and King held a staff meeting to find out why Lewis had been suspended. At that meeting, Melius and two other staff members told King that they spoke to compliance officers about Lewis but that they could not go into the details of their conversations with the City Council compliance officers. (*Id.* at Nos. 42-43.)

After the staff meeting, King's new chief of staff, Helen Hines, who that same month joined King's office, told Melius that she needed to report regularly to the District Office, which is located in the Bronx. (*Id.* at 48.) Previously, Melius worked out of the Manhattan office as well as the District Office. Melius claims that this "transfer" from the Manhattan office was

retaliatory because she lived in Brooklyn at the time and that the commute was "almost" two hours.  (Melius Tr. 189:6.)

There is no documentary evidence in this case that Melius in fact lived in Brooklyn as of April of 2019, and Melius failed to provide any Rule 26(a) disclosures showing a Brooklyn residence.  In addition, her employment file reflects addresses only in Suffolk County and Bronx County.  (Exhibit 10.)  Finally, Melius admitted at her deposition that as a regular part of her duties, she reported to the Bronx office, which was the hub for the activities for King, whose City Council District was in the Bronx. (Statement Nos. 7-14, & 20-25.)

After the April 2019 "transfer," Melius allegedly asked Hines if she could report to the Manhattan office, and Hines denied the request.   (Melius Tr. 182:21-183:7.)  The following month, on May 10, 2019, Melius sent to the City Council's Human Resources Department a letter from her doctor, asking that Melius be provided with an accommodation to work from home two days a week in connection with an ongoing *in vitro* medical procedure.  (Exhibit 9 at 006.)  In response, Human Recourses provided Melius with an accommodation to be able to leave work 2 to 3 hours early in order to make her doctor's appointments, and Melius made all her appointments with the doctor (albeit "late" on about five occasion) until she voluntarily resigned from her staff position a few weeks later on June 11, 2019 to get a higher paying job. (Melius Tr. 248:7-20 & 256:6-15.)

Although Melius claims that the "transfer" and her being late for appointments had a medical impact on her *in vitro* procedures, there is no admissible medical evidence in the record to support this claim and Melius never submitted any kind of expert or treating physician report during discovery to support this contention.

In late June of 2019, after resigning her position as a City Council staff member, Melius

stopped seeing her doctor for *in vitro* procedures.  (Melius Tr. 98:24-99:7.)

*Argument*

*The Summary Judgment Standard*

Summary judgment is warranted where the moving party shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a).   A dispute about a genuine issue exists for summary judgment purposes where the

evidence is such that a reasonable jury could decide in the non-movant's favor.  *Dudley v. New*

*York City Housing Authority,* 2014 WL 5003799, 12-cv-2771 (PGG) (S.D.N.Y. Sept. 30, 2014)

(citing *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)).  In deciding a summary

judgment motion, the Court must "resolve[s] all ambiguities, and credit[s] all factual inferences

that could rationally be drawn, in favor of the party opposing summary judgment." *Dudley,*

*supra,* at 30 (citing *Cifra v. Gen. Elec. Co*., 252 F.3d 205, 216 (2d Cir. 2001)).

"In cases based on allegations of [discrimination and] discriminatory retaliation, courts

must use 'an extra measure of caution' in determining whether to grant summary judgment

'because direct evidence of discriminatory intent is rare and such intent often must be inferred

from circumstantial evidence.' " *Id.* (quoting *Thompson v. Morris Heights Health Ctr*., No. 09

Civ. 7239 (PAE) (THK), 2012 WL 1145964, at *4 (S.D.N.Y. Apr. 6, 2012)).  "However, 'the

salutary purposes of summary judgment - avoiding protracted, expensive and harassing trials -

apply no less to discrimination [and retaliation] cases than to . . . other areas of litigation.' " *Id*. at

31 (quoting *Abdu-Brisson v. Delta Air Lines, Inc*., 239 F.3d 456, 466 (2d Cir. 2001).  "As in any

other case, a plaintiff in a discrimination or retaliation case 'must do more than simply show that

there is some metaphysical doubt as to the material facts.' . . . [H]e must come forth with

evidence sufficient to allow a reasonable jury to find in [his] favor.' " *Id.* (*Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). "Mere conclusory statements, conjecture or speculation" by the plaintiff will not defeat a summary judgment motion." *Id.* (quoting *Gross v. Nat'l Broad. Co.*, *Inc.,* 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002) (*also* citing *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context, . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.")).

### I.  Melius Cannot Establish An Adverse Employment Action

As noted above, Melius's retaliation claims under the Equal Protection clause and the NYCHRL both required that she present evidence from which a reasonable jury could find that she suffered an adverse employment action.  We respectfully submit that no rational jury could find an adverse action on this record, and there are numerous cases within this Circuit that hold that petty inconveniences over work schedules or longer commutes do not raise a genuine issue of fact on this element.  *See, e.g. Tringone v. N.Y. State Office of Mental Health*, 18-CV-1896 (EK) (ARL), at *30 (E.D.N.Y. Nov. 15, 2021) ("Nor does a transfer to a less convenient location amount to an adverse action. "[C]ourts in this Circuit have generally declined to find that transfers (or denials of transfers) amount to adverse employment actions, even in the context of a retaliation claim, where the action results merely in an inconvenience, such as an increased commute or unfavorable hours."); *see also Taylor v. N.Y.C. Dep't of Educ.*, No. 11-CV-3582, 2012 WL 5989874 at *10 (E.D.N.Y. Nov. 30, 2012) (collecting cases); *Ray v. New York State Ins. Fund, No.* 16-CV-2895, 2018 WL 3475467 at *11 (S.D.N.Y. July 18, 2018) (same)

For example, in *Levitant v. City of N.Y. Human Res. Admin.*, 914 F. Supp. 2d 281, 302 (E.D.N.Y. 2012) the court squarely held that "Plaintiff's longer commute as a result of the transfer to Lombardi is only an inconvenience, however, and cannot constitute an adverse employment action."  *Id.* at 302 (citing *Formilien v. Beau Dietl & Assocs.,* No. 10 Civ.

3077(NRB), 2012 WL 2359819 at *10, 2012 U.S. Dist. LEXIS 86523, at *33 (S.D.N.Y. June 21,

2012) ("Even where the inconvenient location of the new workplace combines with less

favorable hours of employment, a transfer may not amount to an adverse employment

action."); *Antonmarchi v. Consol. Edison Co. of N.Y., Inc.,* No. 03 Civ. 7735(LTS) (KNF), 2008

WL 4444609 at *15, 2008 U.S. Dist. LEXIS 75458, at *47 (S.D.N.Y.2008) ( "[A]n

inconvenience, such as an increased commute or unfavorable hours, does not constitute an

adverse employment action for the purposes of Title VII."); *Smalls v. Allstate Ins. Co.,* 396

F.Supp.2d 364, 371 (S.D.N.Y.2005) ("The only substantive difference between the two positions

was that the Elmhurst position resulted in a longer commute—which is an inconvenience, not an

adverse employment action.").  *Accord James v. Mun. Credit Union, No.* 13-CV-4568, 2016 WL

698136 at *7 (S.D.N.Y. Feb. 19, 2016) (change in hours and longer commute from lateral

transfer was not adverse action.).

  In *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 327 (E.D.N.Y. 2014), the court

summarized much of the law on this issue.

> Although Plaintiff characterizes the commute as being a "hardship" for him,
> (Am. Compl. ¶ 42), increased commute time is insufficient for his transfer to be
> considered materially adverse. *See Witkowich v. Holder*, No. 05–CV–7756, 2010 WL
> 1328364, at *4 (S.D.N.Y. Mar. 31, 2010) (plaintiff's allegation that "punitive"
> transfer "to a significantly less desirable post geographically further away from his
> residence," was insufficient to establish adverse action for retaliation claim), *aff'd*,
> 424 Fed. Appx. 20 (2d Cir. 2011); *Everson v. New York City Transit Auth.*, No. 02–
> CV–1121, 2007 WL 539159, at *31 (E.D.N.Y. Feb. 16, 2007) ("[P]laintiff has failed
> to prove that his transfer from Brooklyn to the Bronx was a "materially adverse
> employment action.... [I]t is clear the plaintiff bases his argument on the transfer work
> site's mere distance from his home but offers no other damaging consequences of the
> transfer."); *cf. Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210
> (2d Cir.2006) (finding that plaintiff's transfer to an office where he "would not be
> allowed to perform the broad discretionary and managerial functions of that position,
> no one would report to him, and he would be forced to do work normally performed
> by clerical and lower-level personnel" was an adverse employment action under
> Burlington Northern ); *Flynn v. New York State Div. of Parole*, 620 F.Supp.2d 463,
> 491 (S.D.N.Y.2009) (transfer to a position where plaintiff "was no longer responsible

for supervising the cases that were of particularly high interest and of a sensitive nature" could be an adverse action for retaliation claim). Plaintiff's transfer to the Bronx is not an adverse action for purposes of his retaliation claim.

*Id.* at 327.

While courts have found that a longer commute can, in some circumstances, raise a question of fact, *see Shargani v. N.Y.C. Dep't of Envtl. Prot.*, 21 Civ. 337 (AKH), at *3 (S.D.N.Y. Apr. 7, 2022),[1] there must be some extenuating circumstances that can convert a mere inconvenience into a materially adverse action. *Dudley, supra,* at 50 (citing *Seale v Madison County*, 929 F. Supp. 2d 51, 76 (N.D.N.Y. 2013)).

Here, no reasonable jury in this case could rationally find that Melius's "transfer" was materially adverse or that it might discourage a reasonable employee from making a complaint of discrimination. First, Melius was not transferred to a new or remote location out of the blue. She was told to report on a regular basis to the District Office to which she already regularly reported about 40% to 60% of the time *before* the alleged retaliation. (Rule 56.1 Statement Nos. 22-27.) As such, the minor change was neither material nor adverse to her, there are no extenuating circumstances, and the request for Melius to report more regularly to the District Office was entirely foreseeable, given the fact that the District Office was the central hub for King's activities as a Council Member *from the Bronx.*

Second, the undisputed facts in this case show that Melius *already* had a substantial commute to work before the alleged retaliation began. (Rule 56.1 Statement No. 10-20.) As such, no reasonable jury could find that Melius's commute after April of 2019 became materially adverse because she had, since the inception of her work at King's office, commutes of equal or longer duration. An adverse action must be more disruptive, and not a mere inconvenience or an

---

[1] Citing *Terry v. Ashcroft,* 336 F.3d 128, 145 (2d Cir. 2003) (noting that a reasonable trier of fact could conclude that a "much more taxing commute" could constitute an adverse employment action); *Feingold v. New York,* 366 F.3d 138, 151 n. (2d Cir. 2004) (same)).

alteration of job responsibilities. *Reyes v. Westchester Cnty. Health Care Corp.*, 2021 WL 4944285, No. 21-0410, at *1 (2d Cir. Oct. 25, 2021).  Petty slights or minor annoyances that often take place at work and that all employees experience do not constitute actionable retaliation. *Id.* (citing *Hicks v. Baines,* 593 F.3d 159, 165 (2d Cir. 2010).  The minor change in her reporting duties was nothing more than an inconvenience that does not constitute adverse action under either the federal standard or the more liberal NYCHRL standard.  *Dudley, supra*, at 50-51.

Finally, it is undisputed that at her request, Melius was permitted to leave work early in order to go to her doctor's office and that she did not miss any of her doctor's appointments. (Rule 56.1 Statement Nos. 60-67.)   While she did claim that on about five occasions she was late for these appointments, being late to an appointment on occasion is mere inconvenience, not the kind of action (even if attributed to the employer) that could be considered materially adverse.

## II.  The Equal Protection and City Law Claims Should Be Dismissed

The Equal Protection Clause of the Fourteenth Amendment most typically reaches state action that treats a person poorly because of the person's race or because of another suspect classification, such as sex, national origin, religion, political affiliation, among others, or because the person has exercised a fundamental right, or because the person is a member of a group that is the target of irrational government discrimination. *See generally Engquist v. Oregon Dep't of Agriculture*, 553 U. S. 591(2008); *Plyler v. Doe*, 457 U. S. 202, 216-17 (1982).  The Supreme Court has also recognized the prospect of a so-called "class-of-one" equal protection claim. *Village of Willowbrook v. Olech*, 528 U. S. 562 (2000). A class-of-one claim need not allege

invidious discrimination based on a suspect classification, but must allege that the plaintiff was singled out arbitrarily, without rational basis, for unfair treatment.

*Engquist* held that class-of-one claims cannot be based on the highly discretionary and individualized sorts of decisions that public employers must make about their employees. The *Engquist* Court pointed out that its decision in *Olech*, which first recognized class-of-one equal protection claims, rested on "the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." 553 U.S. at 602. Some forms of state action "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Id*. at 603.  "[A]llowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." *Id*. "It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Id*. Accordingly, the class-of-one theory of equal protection is a "poor fit" with employment decisions, which are themselves "often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id*.  Based on this analysis, the Court held that "a class-of-one theory of equal protection has no place in the public employment context." *Id*.

In an effort to avoid *Engquist,* Melius argues that the Equal Protection clause includes a stand-alone or blanket protection against any kind of retaliation in the workplace.   Citing *Vega v. Hempstead Union Free School Dist.,* 801 F. 3d 72 (2d Cir. 2015), Melius argues that *Engquist* does not apply and that she can bring a claim for retaliation under Section 1983 and the Equal Protection clause.  But *Vega* does not save Melius's Equal Protection claim because the Equal Protection clause, like Title VII, does not impose a workplace code of general civility or a private cause of action for every form of conduct that an employee finds rude or offensive.

In *Vega,* the Second Circuit addressed the question of whether a plaintiff who had already asserted an Equal Protection claim for race discrimination against his employer can also state a related and derivative claim under the Equal Protection clause for retaliation by the employer for opposing the employer's discriminatory practices. *Id.* at 80-82. The Circuit made clear that it was extending the Equal Protection clause's protection to that retaliation claim because substantively a retaliation claim in that context is simply another form of discrimination. *Id.* at 82. As such, when a supervisor retaliates against an employee because the employee has complained of discrimination, the retaliation constitutes intentional discrimination for purposes of the Equal Protection clause. *Id.*

But here, Melius does not assert that she made or pursued a claim of discrimination against King or anyone else. Instead, she claims that she was called to a compliance officer's office at the instigation of the compliance officer to ask Melius primarily about anger management issues arising from conduct by Lewis, conduct that was directed at both males and females at the office all of whom were minorities and secondarily about alleged harassment by King's wife against another female staff member. (Rule 56.1 Statement Nos. 32-47.) While it may be correct that Melius was interviewed by a City compliance officer about allegedly rude or hostile conduct on the job, nothing in the record shows that Melius spoke out against King or otherwise participated in protected activity arising from or derived from any claim of invidious discrimination protected by the Equal Protection clause. The evidence only shows that human resources agents were investigating conduct alleged to be rude or belligerent conduct on the job, not race or gender discrimination.

Neither federal nor local law is designed to enact a general civility code for on-the-job conduct. *Tepperwien v. Entergy Nuclear Operations, Inc*., 663 F.3d 556, 568 (2d Cir. 2011)

(Title VII does not set forth a general civility code for the American workplace.); *Williams v. N.Y.C. Hous. Auth.,* 61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dept. 2009) (NYCHRL not a civility code).   Accordingly, *Vega* does not apply, and Melius's Equal Protection claim, therefore, is reduced to a class-of-one claim which *Engquist* held cannot be stated in the public employment context.  Accordingly, the Equal Protection claim should be dismissed.

For these same reasons, the NYCHRL claim for retaliation should also be dismissed. Melius was not opposing any discriminatory practice made unlawful under the local law. NYC Adm. Code § 8-107(7) (referring to practices or proceedings under the local civil rights laws). While Lewis's allegedly belligerent or hostile conduct may be offensive, it does not constitute unlawful discrimination within the scope of the NYCHRL.  *See Williams, supra* (NYCHRL not a general civility code).

### III.  The Failure to Accommodate Claim under City Law Should Be Dismissed

Melius's final and third claim under the NYCHRL is based on the allegation that she was denied a reasonable accommodation.   As noted above, there are two reasons why this claim should be dismissed.

First, it is undisputed that Melius was provided with an accommodation to leave work early to go to her doctor's appointments. (*See* Exhibit 9 at 001).  The record shows that Human Resources approved Melius's request to adjust her work hours to attend her doctor's appointments.  (*Id.* at City Council 001).  And Melius admitted during her deposition that in fact she did not miss any of her doctor's appointments during the relevant period of time.  (Melius Tr. at 247:24-249:10 & 253:17-254:16; Exhibit 1.)

The mere fact that Melius claims that on five occasions she was late for an appointment cannot save this claim.  Judge Gardephe's decision in *Dudley, supra,* sets forth the relevant considerations about mere employee preferences that require dismissal of the claim:

> [Plaintiff] Dudley's desire to begin working an hour and a half later amounts to nothing more than a preference, which is not actionable under the disability discrimination statutes, even assuming that Dudley suffers from a disability. *See Raffaele v. City of New York*, Civ. A. No. 00CV3837 (DGT) (RLM), 2004 WL 1969869, at *16 (E.D.N.Y. Sept. 7, 2004) ("The ADA does not obligate the employer to meet the personal preferences of disabled employees. . . . Accommodations need only be 'sufficient to meet the job-related needs of the individual being accommodated.' Difficulties commuting to a job need not be accommodated.") (citation omitted) (citing cases); *see also Felix v. N.Y.C. Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003) ("The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally."); *Lyons v. Legal Aid Soc.,* 68 F.3d 1512, 1516 (2d Cir. 1995) ("[T]he [ADA's] accommodation obligation does not require the employer to make accommodations that are 'primarily for the [individual's] personal benefit,' such as an 'adjustment or modification [that] assists the individual throughout his or her daily activities, on and off the job,' or to provide 'any amenity or convenience that is not job-related.'" (quoting 29 C.F.R. Pt. 1630, App'x at § 1630.9 ("Interpretative Guidance on Title I of the Americans with Disabilities Act"))).

*Dudley v. N.Y.C. Hous. Auth.*, 12 Civ. 2771 (PGG), at *60-61 (S.D.N.Y. Sep. 30, 2014).

Melius's third claim is also insufficient because she did not have a medical condition related to child birthing or pregnancy identified by the relevant statute.  Under the New York City Administrative Code, employers must extend reasonable accommodations "to the needs of an employee for the employee's pregnancy, childbirth or *related* medical condition."  NYC Adm. Code Section 8-107(22) (emphasis added).

We are aware of no case or authority that extends this section of the local law to the circumstances of this case.  The *Guidance* cited by Melius, *N.Y.C. Human Rights Commission, Legal Enforcement Guidance on Discrimination on the Basis of Pregnancy* at 9 (*see* ECF Doc. # 53-4), refers to infertility as a medical condition.  In the context of the laws on disability discrimination, we submit that the statute refers to a circumstance where a person of childbearing

years has a defined and discernable medical condition that renders the person unable to become pregnant.

Melius has not identified any such medical condition.  Nor has she provided any kind of expert or treating physician report to support such a claim.  To extend the law to a person such as Melius who was unable to become pregnant at the age of 45 would in effect hold that any woman who is beyond the typical years of childbirth can demand a reasonable accommodation for the purpose of investigating possible *in vitro* procedures.  Neither case law nor the underlying purposes of the law support that argument and the Court should hold that the local law was intended to address specific medical conditions (not the mere fact of age) that prevented a woman from becoming pregnant.

## IV.  Melius Should Be Equitably Estopped From Recovering Damages

Finally and in all events, Melius should be equitably estopped from asserting the protections derived from her employment status because she made materially false and perjurious statements in her employment application about her residence and her prior criminal history.  Melius lied under oath about being a City resident and she lied under oath about her criminal history.  (Exhibit 4; Exhibit 10 at 0030; Rule 56.1 Statement Nos. 9, 26-27; & Melius Tr. 9:23-25 & 162:4-163:25.)

As noted above, the New York City Administrative Code provides that an employee who falsifies his or her residence in order to secure City employment forfeits that status.  *See* NYC Adm. Code § 12-120 (imposing a residency requirement on City employees as a condition of employment and expressly providing that the failure to maintain or establish city residence shall constitute a forfeiture of employment).

Since residence in the City was a condition of her employment, Melius should be estopped from seeking the benefits of a status that she secured by fraudulent means.  *See Glus v.*

*Brooklyn Eastern District Terminal*, 359 U.S. 231, 232-33 (1959) ("To decide the case we need look no further than the maxim that no man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts"); *Restatement of the Law of Tort*s 2d at §894 (where a person makes a definite misrepresentation of fact to another person who relies upon that misrepresentation, then the person making the misrepresentation is not entitled to maintain an action in tort against the other person); *see also Heckler v. Community Health Services*, 467 U.S. 51, 59 (1984) ("Estoppel is an equitable doctrine invoked to avoid injustice in particular cases.") (citing *Restatement of the Law of Tort*s 2d at §894 in connection with discussion of whether equitable estoppel applies against the federal government).

Melius argues that equitable estoppel does not apply and that the after-acquired evidence doctrine is the only proper rule of law to govern her misconduct.  But application of the after-acquired evidence doctrine in this case would be pointless because Melius has no claim for lost wages or lost earnings or lost income (Melius Tr. 169:15-17; 182:2-12 & 267:9-12), and the after-acquired evidence rule applies only to cut off the accrual of lost wages after an employer discovered the terminable misconduct by a former employee. *See generally McKennon v. Nashville Banner Publ'g Co*., 513 U.S. 352, 362 (1995).

The Supreme Court's determination in *McKennon* noted that the Court should examine all the facts and circumstances in each case.   "The proper boundaries of remedial relief in the general class of cases where, after termination, it is discovered that the employee has engaged in wrongdoing must be addressed by the judicial system in the ordinary course of further decisions, for the factual permutations and the equitable considerations they raise will vary from case to case." *Id*.  The *McKennon* court also noted that "[i]n determining the appropriate order for relief,

the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party. " *Id.*

Since Melius's misconduct is beyond dispute and since the City law expressly provides for forfeiture of employment, the Court should employ its broad equitable powers to bar Melius from seeking any kind of damages, including costs and attorney's fees in this action.  As a part of that directive, Melius should also be ordered to forfeit any and all monetary benefits that she obtained as a result of her employment or her claim against the City of New York.   We understand that the City and Melius settled her claims against the City prior to the discovery of Melius's misconduct in this case.  Melius should not be entitled to profit from her wrongdoing by seeking or recovering damages in this action.

*Conclusion*

For these reasons, the Court should dismiss the Complaint as a matter of law and order Melius to disgorge any gains that she has derived from this action

Dated:  April 13, 2022

*s/Nathaniel B. Smith*
_____
Nathaniel B. Smith
225 Broadway- Suite 1901
New York, New York 10007
(212) 227-7062
natbsmith@gmail.com

Pamela D. Hayes
200 West 57th Street – Suite # 708
New York, New York 10019
212-687-8724
pamhayes7777@gmail.com